UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Bremer Bank, National Association,<br><br>Plaintiff,<br><br>v.<br><br>Border Bank,<br><br>Defendant. | Case No. 25-cv-1249 (SRN/DTS)<br><br><br>**ORDER ON MOTION TO STAY** |

Cianna Halloran, Cynthia L. Hegarty, Devon Holstad, and William Schumacher, Winthrop & Weinstine, P.A., 225 S. 6th St., Minneapolis, MN 55305, for Plaintiff.

Ryan W. Ames, Dakota Law Group, P.C., 3100 S. Columbia Rd., Ste. 200, Grand Forks, ND 58201, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion to Stay [Doc. No. 24] filed by Defendant Border Bank. Plaintiff Bremer Bank opposes the motion. For the reasons set forth below, the motion is denied.

I.   BACKGROUND

   A.   Lawsuit in U.S. District Court

Plaintiff Bremer Bank's claims arise from underlying promissory notes that non-parties Douglas and Jessica Clark ("the Clarks" or "the Debtors") obtained from Bremer Bank to support the Clarks' farming operations. (Compl. [Doc. No. 1-1] ¶¶ 5–8.) Pursuant to the promissory notes, the Clarks secured their indebtedness by pledging their farming

assets as collateral. (*Id.* ¶ 9.) As alleged in the Complaint, another bank, Defendant Border Bank, holds a junior lien on the collateral. (*Id.* ¶ 14.)

Plaintiff alleges that at some point since 2021, the Clarks paid proceeds from the sale of portions of the collateral (i.e., the Debtors' 2022 and 2023 crops) to Defendant, rather than to Plaintiff, in order reduce obligations they owed to Defendant. (Compl. ¶¶ 15–18.) In the instant lawsuit, Plaintiff alleges that Defendant has retained possession of the collateral despite knowing that Plaintiff holds a superior security interest. (*Id.* ¶ 19.)

In June 2024, the Clarks filed for Chapter 12 bankruptcy in *In re: Brandon Douglas Clark and Jessica Marie Clark*, Case No. 24-60267 (Bankr. D. Minn.) ("First Bankruptcy Case"). In April 2025, the bankruptcy court dismissed the matter without prejudice due to the Debtors' delay in obtaining confirmation of a bankruptcy plan.

Plaintiff filed this lawsuit against Defendant in state court in March 2025, and Defendant removed it to this Court in April 2025. (Notice of Removal [Doc. No. 1]). In its Complaint, Plaintiff seeks a declaratory judgment that it holds a lien in the subject collateral that is valid, perfected, and superior to all of Defendant's interests (Compl., Count 1), and it asserts claims for conversion (*id.*, Count 2), civil theft (*id.*, Count 3), and receipt of stolen property against Defendant (*id.*, Count 4). It seeks damages for the value of the collateral, as well as punitive damages, and attorneys' fees and costs. (*Id.* at 9.)

In addition to the instant Motion to Stay, currently pending before the Court is Defendant's Motion for Partial Dismissal Under Rule 12(b)(6) [Doc. Nos. 4, 5, 14], in which Defendant moves to dismiss Counts 2, 3, and 4 of the Complaint. After the Motion to Dismiss was argued and taken under advisement, Defendant filed the instant motion,

seeking to stay these proceedings. (Def.'s Mem. Supp. Mot. to Stay [Doc. No. 25].) The Court only addresses the Motion to Stay in this Order and will address the Motion for Partial Dismissal separately.

### B. Later Bankruptcy Court Proceedings

After the dismissal of the Clarks' First Bankruptcy Case, they subsequently filed a second Chapter 12 bankruptcy case, *In re: Brandon Douglas Clark and Jessica Marie Clark*, No. 25-60312 (Bankr. D. Minn.) ("Second Bankruptcy Case"), in May 2025. Currently pending before the bankruptcy court is the Motion for Relief from Automatic Stay filed by Old National Bank, Bremer Bank's successor. A hearing on this motion is scheduled for November 12, 2025.

In July 2025, the Clarks filed an adversary complaint in bankruptcy court against Old National Bank and Border Bank. *Brandon Douglas Clark & Jessica Marie Clark v. Old Nat'l Bank & Border Bank*, No. 25-6014 (Bankr. D. Minn.) (the "Adversary Proceeding"). In the Adversary Proceeding, the Clarks ask the bankruptcy court to determine the validity, priority, and extent of Bremer Bank's security interest, and they contend that Bremer Bank released its security interest in their assets in 2020 or 2021. (Adversary Proceeding, Compl. ¶¶ 11–13, 20, 23–24, 49–54.)

Further, the Clarks assert that the instant action in this Court violates the automatic bankruptcy stay effectuated by their bankruptcy proceedings because, they allege, Old National Bank is asserting an interest in their property—property of the bankruptcy estate. (*Id.* ¶¶ 89–96.) The Clarks also ask the bankruptcy court to bar Old National Bank from seeking relief outside of bankruptcy court. (*Id.* ¶ 99.) Old National Bank has moved to

3

dismiss the Adversary Proceeding, and the bankruptcy court will hear this motion on November 12, 2025, along with the pending motion in the Second Bankruptcy Case.

### C.  Defendant's Motion to Stay

In the instant motion, Defendant argues that under the Bankruptcy Code, an automatic bankruptcy stay applies to this action because it involves the Debtors' property. (Def.'s Mem. Supp. Mot. to Stay at 2–3.)  Defendant contends that even if a stay is not mandatory, the Court should still stay the case, in its discretion, to conserve judicial resources and avoid duplicative litigation.  (*Id.* at 4–5.)

Plaintiff opposes a stay, arguing no bankruptcy estate property is at issue and, thus, a stay is unnecessary.  (Pl.'s Opp'n [Doc. No. 35] at 1, 3–7.)  Moreover, Plaintiff asserts that this litigation is not duplicative, making a discretionary stay unwarranted.  (*Id.* at 1, 8–9.)

## II.  DISCUSSION

### A.  Automatic Stay Under Section 362(a)

Under the Bankruptcy Code, Section 362(a)(1) provides for an automatic stay of any judicial "proceeding against the debtor."  11 U.S.C. § 362(a)(1).  Section 362(a)(3) provides that the filing of a voluntary bankruptcy petition "operates as a[n] [automatic stay] applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate."  11 U.S.C. § 362(a)(3).

The Bankruptcy Code defines "property of the estate," in pertinent part, as follows:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

4

> (1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case.
>
> (2) Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.
>
> (3) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.
>
> (6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.
>
> (7) Any interest in property that the estate acquires after the commencement of the case.

11 U.S.C. § 541. In other words, the automatic stay provisions of Section 362(a) generally do not apply to actions that are not directed against the debtor or the debtor's property. *See In re Le*, 537 B.R. 913, 919 (Bankr. D. Minn. 2015) ("the subject matter of the proceeding must have some kind of connection in fact or law, a nexus, to the estate as a whole or to an asset currently in the estate.").

The assets at issue in the instant case are specific proceeds from the Clarks' collateral, in the form of crop sales, that they tendered to Defendant, starting in approximately 2021. (Compl. ¶¶ 17–19.) Although the assets originated from the Debtors, the Debtors acknowledge that they no longer have possession of the subject collateral. (Adversary Proceeding, Compl. ¶ 20) (stating that in 2021, the crop proceeds were "signed over" to Border Bank). As Plaintiff observes, "Bremer seeks to recover proceeds from collateral *paid to* Border to *reduce* Debtors' debt with Border." (Pl.'s Opp'n at 6.) The

contested property is therefore not in the Debtors' hands, nor in possession of the bankruptcy estate.

Defendant relies on *Indigo Marketplace, LLC v. FarmOp Cap., LLC*, No. 4:22-CV-00618-LPR, 2023 WL 3687173, at *8–9 (E.D. Ark. May 26, 2023), for the undisputed principles that a bankruptcy estate "is automatically created when the bankruptcy petition is filed," and that an automatic stay prevents creditors "from making claims for the property of the estate or against the debtor" for the duration of a bankruptcy case. (Def.'s Mem. Supp. Mot. to Stay at 3.)  However, the substantive ruling in *Indigo Marketplace* does not support Defendant's Motion to Stay.  *Indigo Marketplace* involved the sale of a farmer's/farm's soybean crops that were signed over to a middleman, Indigo, despite the farmer's loan and security agreement with a lender, FarmOp, which held a senior security interest.  2023 WL 3687173 at *1–2.  When the middleman refused the lender's demand for the proceeds, the lender filed suit, seeking a declaratory judgment that it held a superior interest in the soybean proceeds.  *Id.* at *3.  Subsequently, when the farmer and farm itself filed for bankruptcy, the lender moved the district court to stay the matter to reflect an automatic stay resulting from the bankruptcy proceedings.  *Id.* The middleman objected. *Id.* The district court ruled that an automatic stay did not apply.  *Id.* at *5–7.  It explained that the proceeds held by the middleman were not part of the bankruptcy estate because the farm had not asserted an interest in the bankruptcy filings, the trustee had not asserted an interest, and the proceeds were out of the farm's hands.  *Id.* at *5.  In addition, the district court noted that the debtors were not defendants in the district court case and had not asserted a claim of ownership over the crop proceeds.  *Id.* at *7.  As in *Indigo Marketplace*,

the crop proceeds here are not in the hands of the Clarks and they have not asserted a claim of ownership over them.

Similarly, in *In re TXNB Internal Case*, 483 F.3d 292 (5th Cir. 2007), the appellate court found that a stay was inapplicable under Section 362(a) where the plaintiff filed a conversion claim against a non-debtor that did not implicate the debtors' property. The bankruptcy court[1] had applied a stay to the proceeding brought by Edge, a natural gas producer that had sold gas to the debtors. *Id.* at 296–97. The debtors failed to pay Edge and they subsequently resold the gas to Duke, a downstream purchaser. *Id.* Edge sued Duke, seeking to recoup the amount the debtors owed for the gas and damages for the conversion of Edge's security interest. *Id.* The Fifth Circuit explained, "Because Edge's claim for conversion against Duke lies against a non-debtor and does not implicate the property of the debtors, the bankruptcy court erred by staying it." *Id.* at 301.

Here too the Clarks are alleged to have paid the subject proceeds to Defendant, and the Clarks do not claim the proceeds. These proceeds are no longer part of the bankruptcy estate. Bremer Bank may have an interest in *other* parts of the bankruptcy estate, but as to the proceeds in question, they are not part of the bankruptcy estate. As the court observed in *Indigo Marketplace*, "the Court knows of no binding authority that extends the application of the automatic stay to an action that is (1) against a non-debtor, and (2)

---

[1] The parties consented to jurisdiction in the bankruptcy court rather than the district court. 483 F.3d at 297.

regarding non-bankruptcy-estate property." 2023 WL 3687173, at *7.  And, as in that case, *id.*, Defendant here points to no such authority for these propositions.

### B. Duplicative Litigation

Turning to Defendant's alternative argument for a discretionary stay to avoid duplicative litigation, "[a] threshold issue for determining whether to abstain due to the pendency of a concurrent federal proceeding is whether the proceedings are, in fact, duplicative." *Ritchie Capital Mgmt., L.L.C. v. Jeffries*, 849 F. Supp. 2d 881, 888 (D. Minn. 2012).  Litigation is duplicative where the plaintiff tries to litigate "the same issue at the same time in more than one federal court." *Id.* (citing *Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 932 (8th Cir. 2011)).

The issue in the Clarks' Adversary Proceeding is whether an oral credit agreement releases them from their loan obligations with Bremer Bank.  As Plaintiff notes, "they seek to extinguish Bremer's security interest entirely." (Pl.'s Opp'n at 9.)  Here, Plaintiff seeks to recover proceeds from Defendant on the basis of its security interest in the proceeds.  That is not the issue in the Adversary Proceeding, and the Clarks are not a party to this case. While these proceedings are not strictly duplicative such that a discretionary stay is warranted, the Court is mindful of Defendant's concerns about duplicative litigation and the possibility of inconsistent results.  The Court recognizes that the proceedings raise some interconnected issues. However, the bankruptcy court is located in this District, and communication between the undersigned judge and Bankruptcy Judge William Fisher, to whom the Adversary Proceeding is assigned, will minimize the risk of inconsistent rulings.

Moreover, the delay caused by a stay would prejudice Plaintiff, whereas there is no such corresponding prejudice to Defendant in proceeding with this case.

Therefore, based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Motion to Stay [Doc. No. 24] filed by Defendant Border Bank is **DENIED**.

Dated: October 29, 2025

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge