UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Bremer Bank, National Association,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Border Bank,<br><br>　　　　　Defendant. | Case No. 25-cv-1249 (SRN/DTS)<br><br><br>**ORDER ON MOTION FOR PARTIAL DISMISSAL** |

Cianna Halloran, Cynthia L. Hegarty, Devon Holstad, and William Schumacher, Winthrop & Weinstine, P.A., 225 S. 6th St., Minneapolis, MN 55305, for Plaintiff.

Ryan W. Ames, Dakota Law Group, P.C., 3100 S. Columbia Rd., Ste. 200, Grand Forks, ND 58201, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

　　This matter is before the Court on Defendant Border Bank's Motion for Partial Dismissal [Doc. No. 4]. Defendant moves to dismiss Counts 2, 3, and 4 of Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, Defendant's motion is granted in part and denied in part.

**I.　BACKGROUND**

　　Plaintiff Bremer Bank's claims arise from underlying promissory notes that non-parties Douglas and Jessica Clark ("the Clarks") obtained from Bremer Bank to support the Clarks' farming operations. (Compl. [Doc. No. 1-1] ¶¶ 5–8.) Under the terms of the promissory notes, the Clarks secured their indebtedness to Plaintiff by pledging their

1

farming assets as collateral. (*Id.* ¶ 9.)  As alleged in the Complaint, another bank, Defendant Border Bank, holds a junior lien on the collateral. (*Id.* ¶ 14.)

Plaintiff alleges that at some point since 2021, the Clarks paid proceeds from the sale of portions of the collateral (the Clarks' 2022 and 2023 crops) to Defendant, rather than to Plaintiff, in order reduce obligations the Clarks owed to Defendant. (*Id.* ¶¶ 15–18.) Plaintiff contends that Defendant has unlawfully retained possession of the collateral despite knowing that Plaintiff holds a superior security interest. (*Id.* ¶ 19.)

Plaintiff filed this lawsuit against Defendant in state court in March 2025, and Defendant removed it to this Court in April 2025. (Notice of Removal [Doc. No. 1]). In its Complaint, Plaintiff seeks a declaratory judgment that it holds a lien in the subject collateral that is valid, perfected, and superior to Defendant's lien. (Compl., Count 1.) Plaintiff also asserts claims for conversion (*id.*, Count 2), civil theft (*id.*, Count 3), and receipt of stolen property against Defendant (*id.*, Count 4).  It seeks damages for the value of the collateral, as well as punitive damages, attorneys' fees, and costs. (*Id.* at 9.)

In the instant motion, Defendant moves to dismiss Plaintiff's claims for conversion, civil theft, and receipt of stolen property.

## II.   DISCUSSION

### A.   Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court assumes the truth of all factual allegations and makes all reasonable inferences in favor of

the nonmoving party, but it is "not bound to accept the truth of legal conclusions couched as factual allegations."  *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022) (citing *Twombly*, 550 U.S. at 555).  When the alleged facts do not establish standing to sue or the plaintiff has no "viable legal theory" to support its claims, the Court must dismiss the case.  *See id.*; *Warth v. Seldin*, 422 U.S. 490, 501–02 (1975).  In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d).  The Court may, however, "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record."  *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)).

     **B.**     **Conversion (Count 2)**

Defendant argues that Plaintiff's conversion claim fails under Rule 12(b)(6) because Plaintiff does not allege the conversion of "tangible" property.  (Def.'s Mem. Supp. Mot. for Partial Dismissal at 5–6.)

Conversion is "an act of willful interference with [the personal property of another], done without lawful justification, by which any person entitled thereto is deprived of use and possession," and "the exercise and dominion and control over goods inconsistent with, and in repudiation of, the owner's rights in those goods."  *TCI Bus. Capital., Inc. v. Five Star Am. Die Casing, LLC*, 890 N.W.2d 423, 430–31 (Minn. Ct. App. 2017).  A claim for conversion therefore requires two elements: (1) the plaintiff has a property interest; and (2) the defendant deprives the plaintiff of that interest.  *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 986 (8th Cir. 2008) (citing *Olson v. Moorhead Country Club*, 568 N.W.2d

3

871, 872 (Minn. Ct. App. 1997)). Again, Defendant argues that Plaintiff fails to adequately plead the first element of the claim because the property interest is not tangible.

### 1.  Property Interest

The unauthorized interference with or control over a security interest may support a claim for conversion. *UMB Bank, N.A. by Marquette Com. Fin. v. Ad Lucem Inc.*, 20-CV-896 (ECT/ECW), 2020 WL 6867410, at *2 (D. Minn. Nov. 23, 2020) (finding allegation sufficient to constitute a legitimate cause of action for conversion where it alleged that "[b]y collecting payment on the [a]ccounts directly and by failing to remit the proceeds to Marquette, [Defendants] have intentionally deprived Marquette of its interest in the [a]ccounts and converted Marquette's [c]ollateral."); *H&S Contracting, Inc. v. Kinetic Leasing, Inc.*, No. 17-CV-355 (JRT/LIB), 2018 WL 3340372, at *9 (D. Minn. June 8, 2018) ("Regarding conversion[] claims in the context of secured transactions, as a threshold matter, Minnesota Courts hold that a claim for conversion may be raised against a buyer of property which was subject to a security interest.") (citing *Farmers State Bank of Delevan v. Easton Farmers Elevator*, 457 N.W.2d 763, 765 (Minn. Ct. App. 1990) ("Because the transferee takes subject to the security interest, the secured party may repossess the collateral or maintain an action for conversion.")); *Wangen v. Swanson Meats, Inc.*, 541 N.W.2d 1, 3–4 (Minn. Ct. App. 1995) (affirming judgment on creditor's conversion claim against purchaser of debtor's collateral/inventory where creditor held a security interest in the collateral and debtor used proceeds from sale of collateral to pay a debt owed to secondary lender). *Erlandson Imp. v. First State Bank*, 400 N.W.2d 421, 426–27 (Minn. App. 1987) (finding secured party had conversion claim against implement

dealers, because security interest continued into dealers' hands when debtor made unauthorized transfer of collateral to them to purchase other equipment).

Typically, property subject to conversion claims must consist of tangible personal property. *TCI Bus. Capital*, 890 N.W.2d at 428–29 ("An electronic financial transaction cannot be the basis of a conversion claim."); *RSS Fridley, LLC v. Nw. Orthopaedic Surgeons P'ship, LLP*, No. A21-0664, 2022 WL 200359, at *12 (Minn. Ct. App. Apr. 27, 2022) (unpub.) ("The general rule is that money is an intangible and therefore not subject to a claim for conversion.") (quoting 90 C.J.S. *Trover and Conversion* § 16 (2021)).

Because property in the form of money is not necessarily "tangible" property, an exception applies if the money is "specific and capable of identification" or "where a party shows ownership or the right to possess specific, identifiable money." *RSS Fridley*, 2022 WL 200359, at *12 (quoting 90 C.J.S. *Trover and Conversion* § 16 (2021)). Conversion claims may apply to "documents in which intangible rights are merged, such as promissory notes, bank checks, bonds, and bills of lading." *CyberOptics Corp. v. Yamaha Motor Co., Ltd.*, Civ. No. 3-95-1174 (MJD/RLC), 1996 WL 673161, at *25 (D. Minn. July 29, 1996) (Erickson, Mag. J.), *adopting report & recommendation*, Civ. No. 3-95-1174 [Doc. No. 84] (D. Minn. Feb. 14, 1997).

In *RSS Fridley*, the Minnesota Court of Appeals found that a conversion claim based on an alleged "overpayment" made pursuant to a purchase agreement constituted an undefined amount of money and could not form the basis for a conversion claim. 2022 WL 200359, at *12. Other examples of intangible property, not subject to a conversion claim, include "[t]rade secrets, proprietary information, intellectual property, and digital

copies of photographs." *Fairview Health Servs. v. Armed Forces Off. of Royal Embassy of Saudi Arabia*, 753 F. Supp. 3d 733, 749–50 (D. Minn. 2024).

Here, Defendant argues that the exception to the general requirement of tangible goods is inapplicable because Plaintiff has not alleged a specifically identifiable amount that was unlawfully converted, but only "an amount exceeding $300,000." (*See* Compl. ¶ 19.)

At this stage of the litigation, however, the Court finds that Plaintiff's conversion claim survives Rule 12 dismissal. Plaintiff's Complaint refers to the underlying security agreements between the Clarks and Bremer Bank, in which the Clarks pledged to Bremer Bank numerous assets as collateral to secure their bank notes, including "All Equipment, Crops, Machinery, Vehicles, Government Payments and Livestock." (Compl. ¶ 11 & Ex. B.) Through the promissory notes and Plaintiff's allegations concerning them, it has sufficiently alleged "ownership or the right to possess specific, identifiable money." *RSS Fridley*, 2022 WL 200359, at *12. The proceeds from the sale of the Clarks' crops are specific and capable of identification, unlike the undefined claim of "overpayment," and Plaintiff's property interest arises from underlying promissory notes.

Moreover, in addition to reflecting the dollar amount of the sale proceeds, discovery may further reveal that the collateral proceeds are in tangible forms such as checks. Discovery may also reveal what, if anything, Defendant has done with the collateral. *See Wangen*, 541 N.W.2d at 3–4 (noting that debtor used proceeds of sale of collateral to pay debt owed to secondary lender).

6

Accordingly, the Court finds that Plaintiff has alleged a sufficiently identifiable property interest to support its claim for conversion. Accordingly, Defendant's Motion for Partial Dismissal is denied as to Plaintiff's conversion claim (Count 2).

### C.   Civil Theft, Minn. Stat. § 604.14 (Count 3)

Defendant also moves to dismiss Plaintiff's civil theft claim, arguing that Plaintiff fails to allege the initial wrongful act of stealing, and that Plaintiff does not have an ownership interest in the collateral.

Minnesota's civil theft statute requires some showing of "stealing."[1] Minn. Stat. § 604.14, subd. 1. Specifically, it provides that "[a] person who steals personal property from another is civilly liable to the owner of the property for its value when stolen plus punitive damages." *Id.*

Although "[t]he filing of a criminal complaint, conviction, or guilty plea is not a prerequisite to liability" under the civil theft statute, "courts rely on the criminal theft statute to determine whether a defendant's conduct amounted to theft." *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1076 (D. Minn. 2013); *accord City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*, 979 F. Supp. 2d 981, 996 (D. Minn. 2013); *but see TCI Bus. Capital*, 890 N.W.2d at 431 (finding no textual basis for interpreting the civil-

---

[1] While civil theft and conversion are similar, they are distinct claims. *Tank v. Krusemark*, No. A18-2120, 2019 WL 3776020, at *3 (Minn. Ct. App. Aug. 12, 2019). "The primary distinction between 'steal' and 'conversion' is that a person must wrongfully obtain possession to steal, but a person may be liable for conversion after rightfully obtaining possession of property. *Id.* Thus, conversion is broader than civil theft.

theft statute in connection with the criminal-theft statute "because the plain language of the [civil-theft] statute does not use the word 'theft.'"). Minnesota's criminal theft statute defines theft as transferring, concealing, or retaining property "intentionally and without claim of right . . . with intent to deprive the owner permanently of possession." Minn. Stat. § 609.52, subd. 2(1).

In common usage, "steal" means "that a person wrongfully and surreptitiously takes another person's property for the purpose of keeping it or using it." *TCI Bus. Capital*, 890 N.W.2d. at 431 (quoting WEBSTER'S NEW INTERNATIONAL DICTIONARY (2d ed. 1946)); *see also Staffing Specifix, Inc. v. Tempworks Mgmt. Servs., Inc.*, 896 N.W.2d 115, 126 (Minn. Ct. App. 2017) (applying wrongfully-and-surreptitiously standard from *TCI Business Capital*, and noting, "This definition makes clear that for a person to steal something, there must be some initial wrongful act in taking possession of the property."), *aff'd*, 913 N.W.2d 687 (Minn. 2018). In *TCI Business Capital*, the Minnesota Court of Appeals also referenced the definition of "steal" in MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2014): "[t]o take (personal property) or appropriate without right or leave and with intent to keep or make use of wrongfully; as, to steal money or another's goods." 890 N.W.2d at 431. When the property in question is money in an intangible form, "the property is 'used' only if a person spends the money or invests it." *Id.*

"[C]ases in which plaintiffs have been permitted to proceed on claims of civil theft, including those based on theft by swindle, typically involve an element of fraud at the time a transaction takes place or property is first obtained." *City of Farmington Hills Retirement Sys. v. Wells Fargo Bank*, 979 F. Supp. 2d 981, 996–97 (D. Minn. 2013) (citing *Damon*,

8

937 F. Supp. 2d at 1076–77); *see also Isleman v. Pub. Storage*, No. A20-0092, 2020 WL 6846352, at *8 (Minn. Ct. App. Nov. 23, 2020) ("Because the undisputed facts do not show that respondent wrongfully took the contents of the storage unit initially, the district court did not err as a matter of law in granting summary judgment on the civil-theft claim."). In *City of Farmington Hills*, the court held, on a motion for partial summary judgment, that the allegations and evidence in the record failed to support a claim that the plaintiffs "were initially tricked or deceived into entering into the [securities lending program]" offered through Wells Fargo Bank. 979 F. Supp. 2d at 996–97. Instead, the case involved Wells Fargo's allegedly improper actions "in misrepresenting or failing to disclose material information to Plaintiffs that would have potentially contributed to Plaintiffs' ability to make an informed decision as to whether to stay in the [securities lending program] or exit at an earlier time." *Id*. at 997.

        1.     **Wrongful Act of Stealing**

Plaintiff alleges that Defendant had both constructive and actual notice of Plaintiff's superior security interest in the collateral for two reasons. First, Plaintiff's perfected security interest was reflected in UCC-1 financing statements. (Compl. ¶¶ 12–13 & Ex. C.) Second, in letters that Plaintiff sent to Defendant in March 2024 and February 2025, Plaintiff demanded that all proceeds of the subject collateral be delivered to Plaintiff. (*Id.* ¶¶ 20–24 & Ex. E.) While the Complaint alleges that Defendant received the proceeds from the Clarks knowing of Plaintiff's superior lien, this pleading fails to meet the standard of "wrongfully and surreptitiously tak[ing] another person's property." *TCI Bus. Capital*, 890 N.W.2d. at 431. The Complaint does not plausibly allege that Defendant "stole" the

collateral proceeds. Rather, the Complaint makes clear that Defendant initially gained possession of the collateral proceeds from third parties, the Clarks, pursuant to the Clarks' promissory notes with Defendant. (Compl. ¶ 17) ("On information and belief, since 2021, the Clarks and the Farm have paid proceeds of the sale of Bremer's Collateral to Border to reduce obligations owing to Border under promissory notes executed between 2021 and 2023."). While the pleadings adequately allege a conversion claim, they fail to plead stealing or intentionally wrongful conduct sufficient to adequately state a claim for civil theft.[2]

Under these facts, repleading would not cure the deficiencies. *See Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (noting that an amendment is considered futile when it "could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure."). There is no factual dispute that Defendant received the proceeds pursuant to its promissory notes with the Clarks. For all of the foregoing reasons, the Court grants Defendant's Motion for Partial Dismissal with respect to Plaintiff's civil theft claim (Count 3), which is dismissed with prejudice.

### D.   Receipt of Stolen Property, Minn. Stat. § 609.53 (Count 4)

Defendant also moves to dismiss Plaintiff's claim for receipt of stolen property, arguing that civil liability is unavailable absent the filing of a criminal complaint, conviction, or guilty plea. (Def.'s Mem. Supp. Mot. for Partial Dismissal at 8–9.)

---

[2] Because the Court finds this element is lacking, the Court need not address Defendant's argument that Plaintiff fails to state the second element of a civil theft claim —an ownership interest in the property.

10

Minnesota's criminal code penalizes the receipt of stolen property as follows: "[A]ny person who receives, possesses, transfers, buys or conceals any stolen property or property obtained by robbery, knowing or having reason to know the property was stolen or obtained by robbery, may be sentenced in accordance with the provisions of section 609.52, subdivision 3." Minn. Stat. § 609.53, subd. 1. In addition, the statute provides for civil liability for the receipt of stolen property, stating, "Any person who has been injured by a violation of subdivision 1 . . . may bring an action for three times the amount of actual damages sustained by the plaintiff or $1,500, whichever is greater, and the costs of suit and reasonable attorney's fees." *Id.*, subd. 4.

Defendant relies on *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 351–52 (8th Cir. 2007), in which the Eighth Circuit found there can be no civil liability under § 609.53 absent the filing of a criminal complaint, a criminal conviction, or a guilty plea for the receipt of stolen property or theft. (citing *Minnesota Min. & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, No. 4-86-359, 1991 WL 441901, at *63 (D. Minn. Apr. 30, 1991) ("Although the statute does not specifically state what constitutes a 'violation' of subdivision 1, the Court interprets the term 'violation' as requiring a conviction under the statute before the civil remedy can be invoked. This Court did not conduct a criminal trial, and will not hold that [Defendant] has 'violated' a criminal statute.")); *Miller Johnson Steichen Kinnard, Inc. v. Smith*, No. C3-02-2270, 2003 WL 21911200, at *1 n.1 (Minn. Ct. App. Aug. 12, 2003) (stating "Minn. Stat. § 609.53, subd. 4, provides that one injured by the crime of receipt of stolen property may bring a civil action for three times the damages sustained."); *Sec. Sav. Bank v. Green Tree Acceptance, Inc.*, 739 F. Supp. 1342, 1350 n.5

(D. Minn. 1990) (denying summary judgment on civil theft claim because "there is no evidence of intent as required by the statute," and noting, "In addition, it is questionable whether Minn. Stat. § 509.53 applies where there has been no criminal prosecution for theft."). Here, there is no allegation that Defendant is subject to a criminal complaint, or was convicted based on its conduct. Therefore, Defendant argues that Plaintiff's claim for receipt of stolen property fails as a matter of law.

In response, Plaintiff points to a more recent decision, *Markle v. Metro Metals Corp.*, No. A15-1970, 2016 WL 4497278, at *3–4 (Minn. Ct. App. Aug. 29, 2016) (unpub.), in which the Minnesota Court of Appeals found that "under the unambiguous language of Minn. Stat. § 609.53, subd. 4, a criminal conviction for violating Minn. Stat. § 609.53, subd. 1, is not required to establish civil liability for damages." *Id.* The appellate court noted that the statute speaks of "a violation subdivision 1," rather than of a conviction.

In order to rule on Defendant's motion, however, the Court need not reconcile this conflicting authority. Based on a plain reading of the statute, and for the reasons stated with regard to Plaintiff's civil theft claim in Count 3, the Complaint fails to adequately plead "stolen" property or property obtained by "robbery" in Count 4. This dispute involves two lienholders for whom promissory notes created security interests in the Clarks' collateral. A civil action for receipt of stolen property simply does not align with these facts.[3]

---

[3] The Court further notes that Plaintiff's authority, *Markle*, is factually distinguishable. In *Markle*, plaintiffs alleged that the defendant, a scrapyard, had demolished eight stolen vehicles after purchasing them from thieves without requiring proof of title and without making any effort to determine whether the vehicles had been

Defendant's Motion for Partial Dismissal is therefore granted with respect to Count 4. Because amending this claim would not cure the not cure the deficiencies, under these facts, and would be futile, Count 4 is dismissed with prejudice. *See Zutz*, 601 F.3d at 850 (8th Cir. 2010).

Therefore, based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Border Bank's Motion for Partial Dismissal [Doc. No. 4] is **GRANTED in part** and **DENIED in part**.

2. Counts 3 and 4 of the Complaint are **DISMISSED with prejudice**.

3. Defendant shall have 14 days from the date of this Order to answer or otherwise respond to the remaining counts in the Complaint.


Dated: October 29, 2025                         s/Susan Richard Nelson
                                                SUSAN RICHARD NELSON
                                                United States District Judge

---

stolen. 2016 WL 4497278, at *1. At trial, defendant stipulated that the plaintiffs owned the vehicles, and that the defendant had not purchased the vehicles from the owners. *Id*. Here, there is no such stipulation from Defendant that Plaintiff owns the collateral.